## COLEMAN v. WILMINGTON, COLUMBIA & AUGUSTA RAILROAD COMPANY.

1. The conductor of a material train, even in the matter of readjusting a switch, is not a fellow-servant with a laborer on his train, but is a representative of the master.

2. A railroad company is not liable to one of its servants for the consequences of an isolated act of a third person over whom the company has no control; but where the company had ground for believing that a switch had been previously opened with a false key, and a train thrown off its proper track, the Circuit Judge properly submitted to the jury whether the company had been guilty of negligence in failing to take proper precautions to prevent a repetition of this act.

3. In action for injury to an employee resulting from a misplaced switch, the judge did not err in charging the jury that the railroad company was guilty of negligence if it failed to supply and maintain safe and suitable machinery and appliances, for keeping a switch properly connected is maintaining the track as a proper appliance.

Before ALDRICH, J., Sumter, October, 1885.

The opinion fully states the case.

*Mr. J. H. Rion*, for appellant.

*Messrs. Bowman & Harby*, contra.

August 3, 1886. The opinion of the court was delivered by

MR. JUSTICE McGOWAN. Paul Coleman, a laborer in the service of the defendant company, brought this action against said company for damages on account of personal injuries received by him in the discharge of his duty, on April 23, 1885, at Eastover, in Richland County. It appeared that Coleman was a laborer on a material train, of which J. W. Griffin was the conductor; that after their day's work on the day stated, the train was run to the station at Eastover, and arriving there a little after sundown, the conductor, Griffin, had the switch turned so as to connect with a side track at that place, and ran the train on said track in order to spend the night. The laborers remained in the shanty of the material train, and about two hours after the

regular passenger train, in passing, ran on the side track and into collision with the material train, by which one man was killed, and Coleman, the plaintiff, had his left foot and leg crushed. The negligence alleged was in allowing the switch to remain in connection with the turn-out instead of the main line.

The defendant company denied negligence, and for a second defence, stated specifically, that at Eastover they had a side track connected with the main line by a railroad switch, and that said switch was in good order and condition; that on the day mentioned they moved a train of cars upon the side track and caused it to stop thereon; that they disconnected the said side track from the main line and carefully locked the switch, and that thereafter said switch was unfastened by some evil disposed person to them unknown, and the main line was thereby broken, and a train running on the main line was turned into the side track and unavoidably collided with the material train standing thereon, without any fault or negligence on their part, &c.

The conductor, Griffin, testified positively that after going in upon the side track he turned the switch and restored the connection with main line and locked it. There was proof, however, tending to show that a collision on the same side track, very much in the same way, had occurred in August of the preceding year; and that the result of an investigation, ordered on that occasion, was to acquit the officials and to restore them to their places, there being grounds to believe that the lock of the switch, found unbroken, must have been tampered with, picked, or unlocked with a false key, in the possession of some malicious person, unknown to and beyond the control of the officers of the company; that notwithstanding this incident, the company had never changed the lock, but continued to use the same until after the last collision, in which the plaintiff was injured. The change of *one lock* would have made it necessary to change all on the road of the same pattern.

Upon the close of the plaintiff's testimony the counsel of the defendant company moved for a non-suit on two grounds: first, that the testimony for the plaintiff disclosed the fact that the injury to him resulted from an accident, caused either by the malicious act of some third person, over whom the defendant had

no control; or second, from the negligence of a fellow-servant of the plaintiff. The motion was refused and the trial proceeded. Both parties made requests to charge. Some were charged as presented and others modified and some refused. The matters complained of appear in the exceptions. Upon the charge of the judge the jury found a verdict of $1,500 for the plaintiff, and the defendant appeals upon the following exceptions:

I. "For that his honor allowed the plaintiff's first request to charge, 'If from the evidence the jury believe that the defendant failed to supply the plaintiff with safe and suitable machinery and appliances with which to discharge his duties, or that, having originally supplied the same, afterwards failed to maintain and keep in good repair such machinery and appliances, and that, by reason of its failure so to do, the plaintiff was injured as alleged, then the defendant is guilty of negligence, and the plaintiff is entitled to a verdict.' Such request, even if sound as an abstract proposition of law, not being pertinent to the facts proved in this case.

2. "For that his honor refused the defendant's second request to charge: 'If the jury believe that the defendant's side tracks and machinery were properly constructed and in good repair, and that the defendants exercised due care in the employment of competent, skilled, and prudent servants in the conduct of their business, and that the injury to the plaintiff was caused by the negligence of a fellow-servant, in neglecting to disconnect the side track from the main line of the railroad, then the defendants are not liable in this action,' on the ground that it was not involved in the decision in this case.

3. "For that his honor refused the defendant's third request to charge: 'That under the facts as proved in this case, the servant who was charged with the duty of attending to the switch, in disconnecting said side track from the main line, was a fellow-servant of the plaintiff,' on the ground that it is a question of fact for the jury.

4. "For that his honor refused the defendant's fourth request to charge: 'That the plaintiff cannot recover damages in this case for any injury that may have resulted to him from the neg-

ligence of a fellow-servant,' on the ground that such request can-
not be allowed if negligence be proved.

5. "For that his honor refused the defendant's fifth request to
charge: 'That the omission of the defendants to change the locks
and keys on all the switches on their line of railroad, because
there had been a suspicion that some one possessed a key to one
of the switches, does not amount in law to negligence,' on the
ground that that is a question for the jury to pass upon.

6. "For that his honor modified the defendant's sixth request
to charge: 'If the jury believe that the switch at Eastover was
in good condition at the time of the accident, and that the acci-
dent did not result from the negligence of the defendants, they
cannot be held liable for the acts of third persons over whom they
had no control,' saying, 'allowed, unless you believe there was
negligence in not changing the key.'

7. "For that his honor charged the jury as follows: 'The sim-
ple question for you is, was the defendant railroad guilty of neg-
ligence in not supplying new locks on the switches of the line, or
placing guard at that particular switch, because the accident had
happened there before?'

8. "For that his honor instructed the jury as follows: 'As to
damages I have already instructed you. You have no proof of
the extent of the injury except the personal inspection you have
made from your box. Is it a permanent injury, or are you satis-
fied that the leg was not broken?'

9. "For that his honor refused the defendant's motion for a
non-suit, made on the ground that the testimony for the plaintiff
disclosed the fact that the injury to him resulted from an acci-
dent caused either by the malicious act of some third person over
whom the defendant had no control, or from the negligence of a
fellow-servant of the plaintiff."

As to the last exception (9), complaining of error in refusing
the non-suit. It is very clear that at 8 o'clock, two hours after
the material train had passed out upon the side track, the switch
connected with the side track and caused the collision. That
connection was established to let in the material train, and must
either have remained open or, if then closed, must in some way
have been changed in the meantime. In the view that Griffin,

the conductor, may have left the switch open after using it, the argument was made that, although clear negligence on his part, it was the negligence of a fellow-servant, for which the company is not responsible to the plaintiff; that in reference to the special duty of the conductor to restore the switch to its place in connection with the main line, he was not a "middleman," representing the company, but a mere "switchman," doing the duty of "a mere operative."

We do not clearly see the distinction suggested. Taking the rule to be as stated by Mr. Wood, in his work on Master and Servant, section 438, it seems to us that the adjustment of the switches was an important duty resting on the company, no matter to whom the performance of that duty was delegated. Mr. Wood says: "To formulate a rule from these cases, it would be as follows: whenever the master delegates to another the performance of a duty to his servants, which the master has impliedly contracted to perform in person, or which rests upon him as an absolute duty, he is liable for the manner in which that duty is performed by the middleman whom he has selected as his agent, and to the extent of the discharge of those duties by the middleman, he stands in the place of the master, but as to all other matters he is a mere co-servant."

In the late case of *Calvo* v. *Railroad Company* (23 *S. C.,* 528), this court held that a locomotive engineer and a section master of track-workers are not fellow-servants in the sense that the railroad company employing them would not be liable to one for damages resulting to him from the negligence of the other. In delivering the judgment of the court, Mr. Justice McIver said: "Now, it is well settled that it is the duty of the master, not only to provide his servants in the first instance with suitable and safe machinery and other appliances to do the work for which they are employed, but also to keep the same in proper repair; and any negligence in the performance of such duty, whether done by the master in person or by subordinate agents selected by him for the purpose, would render the master liable for any injury sustained by one of his servants by reason of such negligence. * * * The question is as to the nature of the duty, not as to the rank or grade of the person employed to perform

it.   Is it a duty which the master owes to his servants?   Under the well settled rule above mentioned, we think that nothing can be clearer than that it is the duty of a railroad company to provide a suitable and safe track over which its locomotive engineers and other servants of that class are required to run its trains, and that negligence on the part of those to whom it commits such duty is the negligence of the company," &c.

If it is the duty of the company to provide a suitable and safe track, of which there is no doubt whatever, it is most assuredly no less its duty to keep in order and rightly placed the switches, which are certainly important parts of the track, and probably needing more strict attention than any other.   We do not think that the conductor, Griffin, in respect to the special duty of re-adjusting the switch, was a fellow-servant of the plaintiff in the sense of the rule relied on.   See *Couch* v. *C. C. & A. R. R. Company*, 22 *S. C.*, 557.[1]

But as the conductor, Griffin, testified positively that after passing out upon the side track, he readjusted and locked the switch, it seems to us that the main question in the case, was whether the company was or was not negligent in failing to change the lock at the Eastover switch, after it had been developed that there was at least good grounds for believing that it had been tampered with—picked or opened with a false key.   We have no doubt that, as an abstract proposition, a railroad company is not liable to one of its servants for the consequences of a single isolated act of a third person, over whom the company has no control.   But, as we understand, there may be circumstances connected with it which would make a difference.   If, for instance, the same act at the same place had occurred before, and it was of such a character as could be prevented by timely precautions, it is easy to see that, upon a repetition of the act, a new question might arise, involving the inquiry whether the failure to take these precautions was or was not negligence to charge the company.

As we understand it, the proper control over these railroad switches is a very important matter for the safety of passengers as

---

[1] See, too, *Boatwright* v. *Railroad Company*, *ante* 128.—REPORTER.

well as servants. We cannot doubt that it would be negligence in a railroad company to leave its switches entirely without locks to secure them, thereby putting it in the power of any reckless or malicious stranger to change them at will. And in respect to certainty and security there may not be any great difference between a lock capable of being opened and no lock at all. The question was one of fact, and the Circuit Judge, ruling in effect that there was a *prima facie* case—that negligence on the part of the company might be "reasonably and legitimately inferred" from the circumstances of the case—refused to grant the non-suit and referred the question to the jury; and in this we cannot say that he committed error of law. "The defendant is entitled to a non-suit when there is a total failure of evidence to maintain the plaintiff's case—that is, to show a *prima facie* case ; but if there is any competent and pertinent proof, the force and effect of which must be determined, the case must go to the jury." · *Carter* v. *C. & G. R. R. Company*, 19 *S. C.*, 20 ; *Couch* v. *C. C. & A. R. R. Company*, 22 *Id.*, 558.

As to the first exception. The law announced is undoubtedly sound, but it is said that it was not applicable to the case proved. In the sense that keeping the switch properly connected was "maintaining the track as a proper appliance," we do not see that the charge was so general or impertinent to the facts as to furnish a good ground for reversing the judgment.

Exceptions 2, 3, and 4 relate to the view of the appellant that the conductor, Griffin, as to the special duty of replacing the switch after his train had passed on to the side track, was a fellow-servant of the plaintiff, Coleman, and therefore that the company was not responsible to him for an injury inflicted by the negligence of said Griffin. We disposed of this subject in considering the refusal of the motion for a non-suit, and we need not repeat what was there said.

Exceptions 5, 6, and 7 insist, in different forms, that the failure of the company to change the key of the switch at Eastover, after the first collision at that place, was not negligence, and that the judge should so have instructed the jury. In considering the question as to non-suit, we also determined this point, holding that it was not error of law to refer that question to the jury.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.